## PENZEL v. TOWNSEND, TRUSTEE.
## PENZEL v. STATE NATIONAL BANK.

Opinion delivered April 23, 1917.

CORPORATIONS—INSOLVENCY—PAYMENT OF DIVIDEND.—Under the evidence *held* the directors of a corporation knew of its insolvency at the time they declared and ordered paid a dividend on its capital stock, and that both the stockholders and directors of the corporation were liable to its creditors under Kirby's Digest, §§ 861 and 862.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Johnson & Gray* and *J. A. Watkins,* for appellants.

1. Two elements are indispensable to create a liability under sections 861-2 of Kirby's Digest. (1) The insolvency of the corporation and (2) the knowledge of the directors that the corporation is insolvent. 114 Fed. 22; 91 S. W. 262; 31 L. R. A. 593. The directors, when the dividend was declared, acted honestly and were diligent and careful and the court erred in holding them liable.

*Coleman & Lewis* and *Wallace Townsend,* for appellees.

The directors knew the corporation was insolvent and are clearly liable. Kirby's Digest, § § 861-2; 118 Ark. 176, 190; 92 *Id.* 330, 332-4; 115 *Id.* 392; 61 Pac. 612, 618; 57 N. E. 514; 114 Fed. 22; 91 S. W. 262; 31 L. R. A. 593; 92 Ark. 327, 334; 68 *Id.* 433; 75 *Id.* 148; 93 Id. 112, 118; 175 Mich. 168; 141 N. W. 882; 68 Ark. 433; 122 *Id.* 604.

SMITH, J. Wallace Townsend, as trustee of the Little Rock Stave Company, a bankrupt, brought suit in the Pulaski chancery court against appellants, as stockholders of said company, to recover a ten per cent. dividend which was paid on the capital stock of said company on the 16th day of April, 1912, alleging that, on the 12th day of April, 1912, when said dividend was paid, said corporation was insolvent, and that "the payment of this

dividend amounted to the withdrawing and refunding to the stockholders a part of the capital stock of said corporation.''

Appellants answered, admitting payment of the dividend, but denying the corporation was insolvent at the time the dividend was paid, and denying that the payment of this dividend amounted to the withdrawing and refunding to the stockholders part of the capital stock.

The State National Bank brought suit against the directors of the Little Rock Stave Company, and alleged that on April 16, 1912, they had declared a dividend of ten per cent. on the capital stock of said company, which was paid, and that said corporation was then insolvent, and that said directors knew said corporation to be insolvent, and that at that time said corporation was indebted to the State National Bank in the sum of $8,828.78. Judgment was prayed against said directors for said sum with interest.

Appellants answered, admitting payment of the dividend, also the indebtedness of appellee, but denied that said corporation was insolvent on the day alleged, and further denied, if it was insolvent, that they knew such to be the fact.

Appellants also pleaded the statute of limitations.

The two cases were submitted upon the same transcript of evidence by agreement of counsel. In the first case the court found that the defendants there named as stockholders of the stave company received payment of a dividend of ten per cent., declared April 16, 1912, on the face value of their stock and that the payment of said dividend amounted to withdrawing and refunding to the stockholders a part of the capital stock of said corporation, and rendered judgment against each stockholder for the amount so withdrawn. In the second case the court found that the directors of the stave company declared, and paid, on the face value of the capital stock of the stave company, a dividend of ten per cent., and

that, at the time said dividend was declared and paid, the company was insolvent, and that the insolvency of the company was known to its directors. There was a finding of the indebtedness due by the company and a judgment for the amount thereof against the directors of the company.

The first of these suits was brought under the authority of section 861 of Kirby's Digest, which reads as follows:

"Sec. 861. If the capital stock of any such corporation shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to them respectively, as aforesaid; but if any stockholder shall be compelled, by any such action, to pay the debts of any creditor, or any part thereof, he shall have the right, by bill in equity, to call upon all the stockholders to whom any part of said stock has been refunded to contribute their proportional part of the sum paid by him as aforesaid."

The second suit was based upon section 862 of Kirby's Digest, which is as follows:

"Sec. 862. If the directors of any such corporation shall declare and pay a dividend when the corporation is insolvent, or any dividend the payment of which would render it insolvent, knowing such corporation to be insolvent, or that such dividend would render it so, the directors assenting thereto shall be jointly and severally liable, in an action founded on this statute, for all debts due from such corporation at the time of such dividend."

The sections of Kirby's Digest set out above authorize the rendition of the decrees herein appealed from, provided the evidence supports the finding made by the court below, and we have only, therefore, to consider the sufficiency of the evidence for that purpose.

It was shown on behalf of appellants that, at the annual meeting of the stockholders of the stave company held on April 16, 1912, a report of the affairs of the company was submitted to the stockholders, which report was signed by Penzel, as president, by Sadler, as vice-president and manager, and by McNair, as secretary and treasurer. This report was devoted chiefly to an explanation of the failure to earn money during the year's business covered by the report. A loss of $1,500 was reported as a result of warm and rainy weather, causing a mould which had reduced the grade of staves owned by the company. It was further recited that the managers of the company had been disappointed in their expectations of shipping their staves in boats, but that on account of the low stage of the river, upon the banks of which the staves had been piled, they had been compelled to haul the staves to the railroad and ship by rail, and that this delay resulted in many staves becoming sundried and checked, to the extent that a loss of $1,200 was entailed on that account. It was also recited that it had become necessary to replace steam boxes which had been in use for a period of five years, at an expense of $600; and it was stated that these expenses and the unusual and unexpected losses would, of themselves, have represented a fair profit on the year's business. It was also stated in this report that the demand for staves was brisk, and that the price had advanced, but that the company's timber and expense in the woods had not increased, and a prosperous year's business was predicted.

The secretary of the company submitted at the stockholders' meeting a statement, under date of April 1, 1912, showing in detail the assets and liabilities of the company, and, according to this statement, there was a balance in favor of the assets of the company of $11,-039.98. This statement, however, did not include the capital stock of the company, amounting to $16,500,

which was fully paid up. The directors testified that they had given attention to the affairs of the company, and held regular monthly meetings for that purpose, and that they believed the company to be solvent at the time the dividend was declared. They stated that the business of the stave company had been uniformly prosperous until that company acquired and took over the business of the Little Rock Hoop Company, which had proved unprofitable and brought upon the stave company its financial troubles, and that they had, themselves, put into the business of the company the sum of $2,500, thinking and believing that by so doing the affairs of that company would be restored to a healthful condition.

It was shown, however, that, notwithstanding the capital stock of the company, as originally subscribed, was $16,500, the stock had been bought up by the present stockholders at fifty cents on the dollar. That the debts of the stave company, with the interest thereon, amounted to $10,729.47, and that there was being carried on the books of the company accounts, aggregating nearly eight thousand dollars, which were worthless, and that these accounts were so carried for two years after they were known to be worthless. The books of the company were audited by a Mr. Orto, an expert accountant, under the direction of the court, and he testified that the books of the company showed a loss of $4,469.92 on the business for the year 1911; and yet a dividend of ten per cent. on the full amount of the capital stock was declared and paid for that year.

The report of the managing officers set out above explained losses of $3,300.00 and Orto testified that the books of the company showed an additional operating loss for that year of $2,605.75, which was increased by $1,650.00 upon the dividend for that amount being declared. It was also shown that this annual report to the stockholders carried certain assets, consisting chiefly of land and timber, at a valuation which was excessive by

more than $1,500.00. It also appears that certain machinery, which was taken into the books at $1,830.00 on April 1, 1910, was, on April 1, 1912, after two years' use, carried at $2,075.00. Certain sheds were carried on the books originally at a valuation of $1,500, but, in this statement of April 1, 1912, were carried as worth $2,001.40. It was also shown that these sheds had not been enlarged or repaired, and that they stood on the ground held by the company under a lease which required the company to surrender the premises on January 1, 1915, and that after the plant closed down the sheds were blown down because of their dilapidated condition.

The figures compiled by the accountant make it certain that the company was insolvent to the extent of several thousand dollars on April 1, 1912, and to a still larger amount if deductions for depreciation were made.

The only question in the case presenting any difficulty is, whether the directors knew the company was insolvent at the time they ordered the dividend paid. These directors held monthly meetings, and allowed themselves a salary of $25.00 per month each. They admitted that they knew these statements contained old accounts, of doubtful value, which had been carried on the books of the company after they were long past due, and upon which nothing had been realized. This $2,500 which the directors claimed to have put into the business, and which they say evidenced their faith in its solvency, was shown to have been a loan which they made to the company on September 15, 1910, for the purpose of purchasing material and paying operating expenses. This loan was made for ninety days, but the company was unable to pay it upon its maturity. At the annual meeting in April, or thereafter, these directors were all present, when a motion was adopted authorizing the charging off of a loss of $4,469.92, as shown by the company's annual report, and at this meeting a dividend of ten per cent. of the full face value of the stock was declared. In

March, 1912, the directors of the company applied to appellee State National Bank for an increased loan, which the president of the bank testified was made upon the representation that the loan was desired to extend the operations of the company; but, immediately upon receiving the money, the directors repaid themselves the loan they had made to the company.

Such was the condition of the affairs of the stave company when the annual meeting of the stockholders of that company was held in April, 1912. The report to the stockholders then made, if given the fullest faith and credit, did not pretend that the company had earned a dollar during the year. In fact, it was chiefly devoted to an explanation of an admitted loss, during the year, of $3,300.00; yet the directors declared a dividend of ten per cent. upon the full face value of the stock; and it is fairly inferable that it was paid out of the proceeds of the loan from the bank made to the company less than a month before that time.

The hopeless condition of the affairs of this company, as shown by the report of the accountant, makes it certain, as we have said, that this company was insolvent when this dividend was declared. And we think the facts recited support the chancellor's finding that the directors were aware of that fact when they ordered the dividend paid. The decree against both the stockholders and directors is affirmed.